Good morning. May it please the Court, Charles Bonneau appearing for Appellant Gilbert Romero. Your Honors, I would like to start with what I think is the most important thing to know about this crime and what brought us here today, and that is that second-degree felony murder is entirely a judge-made law in California. The second-degree felony murder doctrine has no express basis in the State Penal Code. Our first-degree felony murder is based on six felonies that are enumerated in Penal Code Section 189. The same is not true of second-degree felony murder. There are many felonies in California. Some are designated on an ad hoc basis by the Courts of Appeal as inherently dangerous felonies. This point was made forcefully in a decision delivered in August, the concurring opinion by Justice Moreno, quote, unlike first-degree felony murder, which is codified in Section 189, the second-degree felony murder rule remains, as it has been since 1872, a judge-made doctrine without any express basis in the Penal Code. On February 17th of the year 2000, a few months before Mr. Romero's trial, the California Court of Appeal declared that Section 246.3 violation is an inherently dangerous felony. That was the Clem decision in the year 2000. This shooting occurred on October 24th, 1995, four-and-a-half years earlier. The reason for this is that the statute of limitations of Section 246.3 states that if this were a statutory crime, there would be absolutely no question that this was ex post facto. Why would somebody just knowing that the crime was grossly negligent discharge of a firearm think it was inherently dangerous? You would not that would not be at all apparent. And let me explain. First of all, it wasn't even a crime prior to 1988. It was a crime at the time this person committed the crime. Yes. But prior to 1988. That doesn't matter. The question is knowing that there's a crime called grossly negligent discharge of a firearm and knowing that there's a doctrine that if it's inherently dangerous and second-degree felony murder, why wouldn't you think those two fit together and create a secondary felony murder? Well, there's several reasons you wouldn't jump to that conclusion. One, as I say, for centuries the conduct was accepted, common, and not illegal. Number two, when it was rendered criminal in 1988, it was a what we call a wobbler, a felony misdemeanor. It could be charged as a misdemeanor. Now, would the ordinary person think that a crime that was inherently dangerous to human life could be charged as a misdemeanor? That does not seem to follow logically. The question is what is the crime? The crime is grossly negligent discharging of a firearm. If you go and ask 100 people in the street whether that was inherently dangerous, I assume they'd all say yes. You know, I would agree with you if you told them that the shooting was in an urban area. But that's not the question. The question is the crime as defined by the statute. No, you're right. The crime has to be viewed in the abstract. And viewed in the abstract, if you ask the person, if I'm out in the countryside and there's one other person nearby and I fire the gun in a grossly abstract. I beg your pardon? You're not viewing the statute. You're viewing the particular act as opposed to the statute in general. Okay. The statute doesn't say differentiate between firing it in an urban area and firing it in the forest. It's just a single statute. True. But, however, it's also true that all of the cases that have been posed in California involve shootings in urban areas where it's pretty obvious that somebody was going to get hit with this bullet. Don't we decide whether the statute is a statute that qualifies rather than whether the particular offense qualifies or the particular act? What we're trying to say is viewed in the abstract. You're right. It has to be viewed in the abstract. But the California courts have not been giving people adequate notice. They did not give people adequate notice that this conduct would not only be deemed a felony but would be deemed an inherently dangerous felony to human life. That's something that's drastically serious. Usually these crimes have been condemned for centuries. Shooting in an occupied dwelling, that's their big example. They say, of course, shooting at an occupied dwelling is inherently dangerous. Obviously, 246.3 is also. Well, that's not obvious at all. Not if you look at our facts or in the abstract. The crime is defined by gross negligence, right? Yes. Gross negligence presumably has some element of it of gross that you might hurt somebody. You could hurt somebody. There's that possibility. It wouldn't be grossly negligent to fire a firearm someplace where you were never going to hurt anybody, would it? Under this doctrine, I'm not sure that it's that clear. It was designed explicitly for a shooting that's straight up in the air during a celebration. Yeah, when people are there. Right. When perhaps, but now your question is. And first cleared a five-mile radius to make sure there was no one there and fired a firearm, no matter how poorly. I assume you couldn't be guilty of this crime because you wouldn't be grossly negligent. At some point, yes. Now, okay, what if there's one other person in the area of all, for miles around? That's a question of what the crime applies to, but the crime seems to have an element of it that says that it's grossly negligent, meaning you can hurt somebody. You know, in the Robertson opinion, which we've cited, there is a dissenting opinion by Justice Kennard in which she actually talks about this. What if two people are in a house having a domestic disturbance and one shoots the gun in anger? Now, that's something like what we have here. And then she says, what if the bullet ricochets off a tea kettle and hits and kills the victim? Could that be what she's talking about? There is the definition of the crime, right? Yes. She questions whether that's inherently dangerous. Well, if it's not inherently dangerous, then it's not felony murder. That's right. We don't think it's. We don't think it is inherently dangerous. But we have to live with the law. You don't think that this particular act constitutes a violation of that predicate statute? We – well, now, wait a minute. It's a violation of the predicate statute, yes, but it's not inherently dangerous. Those are two different things. In this instance, particular instance, it was inherently dangerous, wasn't it? The woman was there. It wasn't an empty thorns. So I don't see how that helps you anyway. That's imponderable. It was a ricochet, and it was not only a ricochet but a very acute ricochet. The bullet lost most of its mass. So it was very unpredictable. There was somebody there who could be hurt by the grossly negligent discharge and was. Beg your pardon? There was somebody there who could be hurt by grossly negligently discharging a gun, and he knew she was there and she was hurt. So this doesn't seem like the right case in which to apply your hypothesis of an empty thorn. This is a good manslaughter case. This is not a case in which a person was on notice in 1995, assuming that they were committing a felony and not a misdemeanor, that this was inherently dangerous according to whom? According to the California courts? According to the California legislature? Who says so? And if it was, why didn't anybody notice it for the last three or four centuries that we've had firearms? Because the statute didn't exist. True. And that would lead one to think that this is not new technology like the drug cases. It's an old conduct, an old phenomenon that is now we want to call it inherently dangerous. It's just a label. It's not as obvious as it was, for instance, when I was a kid. It wasn't inherently dangerous, at least not in the view of most of us that we all did it. Yes. Yes. Thank you. I think I'll, if I could reserve the remainder of my time. Thank you. Thank you. Good morning. Judy Kaida appearing on behalf of the people. I just would like to note in response to your question, the Court's question, that if it's not grossly negligent, it's not going to be a violation of the statute. If I, in Clem, it said that, then that act in those places would not violate Section 246.3. The elements of the statute alone indicate that it has to be dangerous, an inherently dangerous crime. That's not the issue before this Court. The issue before this Court is whether defendant, is whether the California Court, the court's decision and application was a violation of the defendant's constitutional rights. It was not. But it's closely related to the issue before this Court. It's closely related to the issue before this Court because if the underlying crime is one that can't be committed without essentially being inherently dangerous, then it would appear that somebody ought to know that it was an inherently dangerous felony. But the inherently dangerous determination under the felony murder rule is just that. I understand. Okay. But in terms of the reasonableness of the Court's determination as to Bowie, it was foreseeable. This decision by the California Court was, excuse me, in fact, foreseeable in the light of Hansen. Hansen held that the unlawful discharge at an inhabited dwelling was inherently dangerous. In Hansen, in the opinion itself, it went on and on about the inherent dangerous conduct of shooting a firearm. It's the people's position that in light of Hansen, it was foreseeable that the court in Clem would then hold 246.3 to be an inherently dangerous felony. Does the Court have any questions? Thank you. Thank you. Again, Clem came four and a half years after this conduct. Number two, it is seeking to assure itself. Apparently somebody raised this objection. Hey, wait. What if this is out in the country?  Nobody's going to call that inherently dangerous. They don't know that, and it's not stated in the jury instructions. There's nothing in the jury instructions that would lead you to that kind of calculus. But they said that if it's out in the country, it won't violate the statute. It won't be grossly negligent, which is true. It won't be. It's true. In general, it can happen, however. We had to have notice of it. And customs changed. Law changes. Notice is as of February 17, 2000. We didn't have notice. Thank you. Thank you, counsel. This case just argued is submitted. The next case for argument is Cobbs v. McGrath. Good morning. Jolie Lipsig appearing for petitioner appellant Lorenzo Cobbs, and I'd like to reserve a couple of minutes for rebuttal if I can. This case represents an egregious and fundamental violation of the Sixth Amendment right to the effective representation of counsel. It also sadly demonstrates the failings of our criminal justice system and correctional systems to deal adequately with the mentally ill. Mr. Cobbs, drug addicted and brain damaged, mentally ill, and a repeat
judges: Reinhardt, Thompson, Berzon